UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13 CR 00010 ERW SPM |
| | ) |
| ERIC HINSON, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM ON BEHALF OF ERIC RICHARD HINSON**

COMES NOW Defendant Eric Richard Hinson ("Mr. Hinson"), by and through the undersigned attorneys, and respectfully submits this sentencing memorandum and requests that this Court issue a downward variance in this matter. The purpose of this memorandum is to summarize the grounds that make a downward variance appropriate based upon the unique facts of this case. Attached to this memorandum are nine letters of support and a May 23, 2010 news publication from The Missourian.

**I.   Introduction**

Mr. Hinson is a caring husband to his wife Shelley and a loving father to his sons Josh and Tyler. Mr. Hinson serves as a co-caretaker to his own elderly father, who is afflicted by vascular artery disease and was recently diagnosed with prostate cancer. He has also provided aid to his sister, Cathy, who is unable to care for their father because of her own struggles with cancer. Mr. Hinson has provided immense support to young kids in his neighborhood who have come to him for help.

One of Mr. Hinson's most memorable moments as a firefighter was the opportunity to save the life of a young girl, Paiton Hall, who had undergone a near drowning on a canoe trip

1

and subsequent cardiac arrest. Mr. Hinson and other paramedics responded to the calls of a capsized boat that had pinned Paiton underwater, for ten minutes by some reports. Mr. Hinson and his colleagues made a decision to enter the Meramec at an access point near Moselle, though the reports of Paiton's location were unclear, and head downstream. Mr. Hinson was later quoted by the St. Clair News as stating: "God was with us. He took us right to them." Upon reaching Paiton, Mr. Hinson correctly diagnosed the situation to determine Paiton's airway was obstructed, he removed the obstruction, and Paiton was later airlifted to Children's Hospital. "We did what we were trained to do. Everyone involved did a great job," said Mr. Hinson. Another proud moment where Mr. Hinson was able to provide aid to a citizen was when he responded to the home of Darrell Ross, a Ladue resident who had experienced cardiac arrest on Super Bowl Sunday. Using a new experimental drug that was useful only during a particular rhythm of cardiac arrest, Mr. Hinson drew up the experimental drug on the way to respond, and he was able to use the drug to save Mr. Ross' life with very few lasting effects. Few individuals are able to put their abilities and natural instincts to such practical use, but it is evident Mr. Hinson has used these talents to achieve tangible results for his community, including saving lives. Mr. Hinson realizes the gravity of his offense, and he understands that his image as a helper is forever tarnished. However, his previous brave actions also shed light on his character, and they are relevant to the Court's determination.

Not all Mr. Hinson's positive attributes have resulted in such heroics, but they are no less important to this Court's sentencing decision. Mr. Hinson has coached his sons in baseball, basketball, and football. In addition to coaching, he was active in the local baseball association, providing services such as caring for the fields and helping with the concession stands at sporting events. Aside from his serious transgression, Mr. Hinson has been a model for the support a

citizen can lend to help establish a healthy community.  He routinely mentors neighborhood children and welcomes them into his home, many of whom come from families of less means.  One child Mr. Hinson has mentored is a young man named Drew York, a young man with special needs whose father died at a young age.  Mr. Hinson has acted as a surrogate father, including Drew and his brother Brandon in family occasions and travelling for Drew's Special Olympics events.

A recurring theme of the letters submitted for the Court's consideration is how Mr. Hinson has done his best to move past this offense to remain a pillar of the community.  He continues to provide the same aid to neighborhood kids in need.  He has obtained modest employment with a lawn sprinkler company to ensure he may continue to support his family.  Mr. Hinson is confident he will avoid any temptation to commit any criminal transgression in the future, and at the same time he is deeply regretful that this offense has cost him his opportunity to provide for his family.  The respect and standing in the community Mr. Hinson worked hard to achieve are lost.  This is another result of his crime that is relevant to this Court's sentencing determination—Mr. Hinson has lost nearly everything he held dear.  Mr. Hinson's fall from grace has been steep.  The letters submitted by the government with its sentencing memorandum highlight that Mr. Hinson has little or no standing with men he previously considered his peers, and thus little possibility of regaining status he had once earned.  This is, of course, a form of punishment itself, and it is one Mr. Hinson feels every day.

Mr. Hinson has already submitted a check to repay the amount taken in this matter—$593,236.42.  In order to obtain these funds for repayment, Mr. Hinson and his wife Shelly essentially took an advancement of their eventual inheritance.  Stated differently, absent this action, the restitution order might have gone unpaid like many others where a defendant lacks the

ability to pay. Mr. Hinson recognizes that he cannot undo his conduct, but payment of such a significant restitution amount may be considered by this Court as a strong effort towards making his victim whole and a strong indicator of what the rest of Mr. Hinson's life will bring. Mr. Hinson has demonstrated acceptance of responsibility for his conduct, and this transgression will remain his largest regret in life, one that will have untold consequences for his family.

Mr. Hinson respectfully submits that in weighing all of the relevant factors this Court must consider under 18 U.S.C. §3553(a), the proper applications of the Sentencing Guidelines, and Mr. Hinson's history and characteristics, a downward variance is appropriate in this case.

## II. Sentencing Principles

Title 18, United States Code, §3553(a) directs sentencing courts to consider among other things, the "nature and circumstances of the offense and the history and characteristics of the defendant." Section 3553(a) also requires the courts "to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth" in that statute. Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
(B) to provide adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant
(D) to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner.

The nature and circumstances of Mr. Hinson's crime reveal these were the actions of an otherwise "law-abiding citizen, who did an incredibly dumb thing." *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005). And Mr. Hinson would certainly concede his crime is beyond a dumb thing; his actions will forever alter the course of his life. The Eighth Circuit endorses consideration of a defendant's criminal history as a factor to be used in determining variance. *United States v. Ruvalcava-Perez*, 561 F.3d 883 (8th Cir. 2009). Mr. Hinson has no criminal history whatsoever. Rather, his life had previously been dedicated to upholding public

service. Courts have considered the previous heroic actions of a defendant in imposing sentences outside the Guidelines range. *United States v. Canova*, 412 F.3d 331, 358-59 (2d Cir. 2005) (taking into account the defendant's volunteer firefighting service, good deeds performed in the line of duty, and risk of danger undertaken in the performance of duties).

The Eighth Circuit has recognized payment of restitution as the type of exceptional acceptance of responsibility that constitutes a ground for a downward departure / variance. *United States v. Oligmueller*, 198 F.3d 669, 672 (8th Cir. 1992); *United States v. Condelee*, 961 F.2d 1351, 1353 (8th Cir. 1992); *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir. 1991). Mr. Hinson's effort to make restitution in the amount of $593,236.42 is significant both as a factor unto itself and to underscore that his behavior truly was both out of character and conduct he regrets and intends to correct. Mr. Hinson's significant family ties and responsibilities are properly considered by this Court in fashioning its sentence. *United States v. Bueno*, 549 F.3d 1176, 1181-82 (8th Cir. 2008) (affirming probation with house arrest despite a Guidelines recommendation of over 100 months and despite government's argument with respect to disparity of sentence for similarly situated defendants). His contributions to his community are also properly considered. *See United States v. Huber*, 462 F.3d 945, 952 (8th Cir. 2006).

Mr. Hinson simply is not the type of individual who will commit any type of criminal transgression in the future, and all indicators rather point to Mr. Hinson's ability to again become a productive member of society. *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (affirming a downward variance to probation from a Guidelines recommendation of 41-51 months in a child pornography case in part because the defendant did not fit the profile of a pedophile, had no interpersonal instability, and had the continuing support of his family). The Court should also consider Mr. Hinson's previously unblemished record of public service in this

respect. *See United States v. Johnson*, 516 F.3d 716, 718-19 (8th Cir. 2008) (acknowledging the district court took into account Johnson's record of military service). Lengthy incarceration will not protect the public from further crimes of Mr. Hinson, and he respectfully submits that he has the ability and will continue to make efforts to strengthen his community. Mr. Hinson's offense stands alone against a backdrop of impeccable public service, strong family life, and vital community involvement. Mr. Hinson's precipitous fall from grace is a punishment unto itself, and he and his family will continue to feel the ramifications of his conduct for the rest of their lives. The loss of respect from his peers and the loss of ability to earn income in his profession serve as deterrents to anyone considering such conduct. Mr. Hinson respectfully requests the opportunity to demonstrate his rehabilitation by continuing to provide aid and support to his family and community. In the event the Court imposes a sentence of incarceration, he respectfully requests a downward variance.

## III. Conclusion

Mr. Hinson recognizes the damage his crime has caused, and he has made extraordinary efforts to rectify this damage. His payment of restitution not only serves as a factor in favor of probation, it serves as an underlying indicator Mr. Hinson will continue to make efforts to repair the damage he has caused. Mr. Hinson has fully accepted responsibility for his conduct, and he will continue to make efforts to restore his tight-knit family's reputation and reach out to those in need of his help. Mr. Hinson respectfully submits that the dramatic consequences he has suffered to his reputation and ability to earn future income for his family are properly considered as a form of punishment he cannot escape. Mr. Hinson submits that his prior heroic acts and otherwise unblemished record of public service are properly considered by this Court in fashioning its sentence, and these actions serve as better indicators of the person he will try to be.

WHEREFORE, Eric Richard Hinson respectfully requests this Court grant a downward variance in this matter.

Respectfully submitted,

ASHCROFT HANAWAY, LLC

*s/Catherine L. Hanaway*
Catherine L. Hanaway, #41208MO
222 S. Central Ave., Suite 110
St. Louis, MO 63105
Phone: (314) 863-7001
Facsimile: (314) 863-7008
E-Mail: CHanaway@ashcroftlawfirm.com

JENSEN, BARTLETT & SCHELP, LLC

*s/Jeffrey B. Jensen*
Jeffrey B. Jensen, #46745MO
222 S. Central Avenue, Suite 110
St. Louis, MO 63105
Telephone: (314) 725-3939
Facsimile: (314) 725-5595
E-Mail: JJensen@jbslawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing upon all interested parties.

*s/ Jeffrey B. Jensen*
Jeffrey B. Jensen, #46745MO
Attorney for Defendant