UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:13 CR 00010 ERW |
| vs. | ) | |
| | ) | |
| ERIC HINSON, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District, and for its Response to Defendant's Sentencing Memorandum (doc. 34), states to this Honorable Court as follows:

1. Let's begin with a statement that perhaps we can all agree on: Public service is a public trust. Expanding upon that, we can probably all further agree that public service is a privilege, and that those people who are appointed and elected to positions of public authority should consider themselves privileged and honored to be able to serve. Public servants should not expect accolades for doing the very jobs they have been entrusted with, but they should strive to do their best in order to honor the trust that the public has placed in them.

2. In his Sentencing Memorandum, defendant Eric Hinson now suggests that his years as a public servant should be a mitigating factor and a basis for this Court to exercise leniency at the time of sentencing. He goes so far as to point out a 2010 rescue effort conducted by the Fire District involving a 3 year old girl, and suggests that this was a "heroic act" worthy

1

of a lesser sentence in this case. The government submits that the several other firefighters who participated in that rescue, along with the dispatcher who talked the girl's family through CPR efforts prior to the firefighters' arrival, would consider that they were simply doing their jobs that day as trained first responders, and that they were privileged as public servants to have played a role in the rescue of that little girl. They would not seek out accolades or wish to be considered "heroes". Defendant's reliance upon his prior public service as a basis for leniency ignores, of course, the fact that defendant committed the very crime for which he stands convicted while serving in that position of public trust and, in fact, he used his position of trust in order to carry out and facilitate his criminal scheme, as well as to conceal it. At the same time that he was entrusted with serving the public with integrity and honesty, and personally overseeing the public funds of the St. Clair Fire Protection District, he was embezzling and stealing those public funds he was charged with protecting as Treasurer of the Board of the Fire District. He used his access to those public funds, through his positions as Board Director, Treasurer, and ultimately Chief, in order to steal and personally live a more lavish lifestyle with absolutely no concern for the well being of the Fire District, its firefighters, or the residents served by the District. Defendant did not use those stolen funds for life's necessities, but used those substantial stolen funds to live a more lavish personal lifestyle, including vacation trips to Florida and Hawaii, limousine rentals, jewelry, furniture, and personal vehicles. In what turned out to be a fox watching the chicken coop scenario, those stolen funds were public tax dollars that defendant was personally charged with protecting. Those funds could have and should have been used during those eight years to purchase much needed Fire District equipment, to pay for necessary equipment repairs and upgrades, to hire additional firefighters, and for whatever other

legitimate Fire District purposes that would have benefitted the public, the intended beneficiaries of those stolen tax dollars.  The substantial harm from defendant's criminal conduct is real.  While defendant is fortunate to have an "eventual inheritance" to partially draw from for restitution in this case, it will never make the Fire District, its firefighters, and the public whole in this case, either financially or emotionally.  The trust and bond between the Fire District and the public has been broken as a result of defendant's crime, and it will take years to repair.

3. Elected officials who solicit and accept bribes should not receive a lesser sentence because of their "public service".  Police officers who rip off drug dealers of cash and drugs should not receive a lesser sentence because of their "public service".  In the instant case, the defendant Eric Hinson having stolen and embezzled public funds from the Fire District he was sworn to serve, and having caused real harm to that public entity and the residents it serves, should not receive a lesser sentence because of his "public service".

4. Defendant, relying upon *United States v. Hadash*, 408 F.3d 1080 (8th Cir. 2005), suggests that leniency in sentencing is appropriate here because defendant was an otherwise "law-abiding citizen, who did an incredibly dumb thing".  Well, that might have been true of the postal employee Dennis Hadash who stole firearms from one returned package and used them for target practice, but it certainly does not fit the facts and circumstances of defendant Hinson's criminal conduct here and the government submits that defendant's reliance upon *Hadash* is misplaced.  Defendant Eric Hinson engaged in hundreds of separate acts of theft and embezzlement from the Fire District over a lengthy period of eight years, engaged in a sophisticated scheme to conceal his criminal conduct by manipulating the Fire District's accounting records, and evaded a substantial amount of federal and state income taxes during

3

those years. Defendant's criminal conduct was intentional and substantial, hardly a "dumb thing".

5. Defendant also suggests that his lack of criminal history is a basis for a downward variance and leniency at sentencing. As support, defendant cites this Court to *United States v. Ruvalcava-Perez*, 561 F.3d 883 (8th Cir. 2009). However, the *Ruvalcava-Perez* case involved the affirmance of a District Court's *upward* departure based upon a finding that appellant's "criminal history category VI substantially underrepresented the seriousness of [his] criminal history and risk of recidivism". *Id.* at 886. That case has no relevance whatsoever to this defendant Hinson's sentencing, as his lack of criminal history has already been taken into account by a determination that he falls within criminal history category I. There is no basis to vary below the guideline range on this point.

6. Defendant further seeks a downward variance from the advisory guideline range based upon "family ties and responsibilities". As to the defendant's role as a father and in providing care for his own elderly father, many defendants are similarly situated with substantial responsibilities for the care of elderly or ill parents, young children, and other close family members in need of care. U.S.S.G. Section 5H1.6 specifically addresses this issue, and states that such family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted. Thus, family circumstances is a discouraged factor for the Court to rely upon and, while the guidelines are only advisory, this directive should be given great weight by this Court under the facts and circumstances presented here. For a downward departure based upon a discouraged factor such as family circumstances to be appropriate, those circumstances must be "exceptional". *Koon v. United States*, 518 U.S. 81, 96 (1996). The Application Notes to

U.S.S.G., Section 5H1.6 set forth factors that must be present for a Court to grant an otherwise discouraged downward variance based upon family circumstances:

> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family;
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration;
>
> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family;
>
> (iv) The departure effectively will address the loss of caretaking or financial support.

7. The Eighth Circuit case cited by defendant in support of his request for a downward variance here can be distinguished from his own situation. In *United States v. Bueno*, the Court deferred to the District Court's finding of a variance where a medical expert had opined that defendant's wife's lupus "is life threatening and her long-term prognosis is not good. She is kept alive by her husband. His treatment is irreplaceable and necessary...." *Bueno*, 549 F.3d 1176, 1179 (8th Cir. 2008). This case discusses and establishes a very high standard for such a variance.

8. While there is no question that defendant Hinson currently provides some care and assistance to his elderly father, it cannot be said that he cannot receive the same care from

other numerous family members or from a retained part time housekeeper or caregiver and, thus, defendant's family circumstances are not "exceptional". Defendant's family is in excellent financial circumstances as well. While defendant's efforts at providing assistance to his family and his elderly father is commendable, it is not irreplaceable, and such level of assistance can be provided by other family members sharing the work, or by a part time retained housekeeper or caregiver. As this Court knows, in many, many cases a defendant's criminal conduct has far reaching adverse consequences upon the defendant's own family members, including children, spouses, and parents. That is an unfortunate consequence of a defendant's criminal conduct and, looking to the instant case, and under the facts and circumstances presented here, such consequences do not rise to the level where this Court should vary from the guideline range established for defendant's criminal conduct.

9. Two very recent and similar fraud cases from the Eastern District of Missouri highlight and support the government's position here that defendant's family circumstances do not rise to the level where a downward variance is appropriate. In *United States v. Matthew Kent*, 4:11CR00066RWS, defendant was 41 years old and the father of 4 young children, ages 4, 9, 13, and 14. As proffered in Court at the time of sentencing, defendant suffered physically from Crohn's Disease and Reiters Syndrome. Defendant was required to take multiple medications for these physical ailments, including Remicade infusions every 6 - 8 weeks. Defendant suffered severe side effects from these medications. Defendant Kent also suffered from depression, anxiety, attention deficit disorder, and post traumatic stress disorder and he took multiple additional medications for these ailments. Defendant's request for a downward variance based upon his family circumstances and his health issues was denied by the Court and

defendant received a guideline sentence. In *United States v. Dannielle Welch Benson*, 4:12CR00313RWS, the defendant was a 41 year old mother of 2 small children, ages 1 and 6. As proffered in Court at the time of sentencing, both of these small children suffered health issues. Defendant was also the legal guardian of 2 children of her deceased sister, ages 16 and 19. Defendant underwent a complete hysterectomy just prior to the sentencing hearing, and suffered from other physical ailments, as well as depression. Defendant was the caregiver for her elderly mother who suffered from severe depression. Defendant's request for a downward variance based upon these family circumstances and health issues was denied by the Court and defendant received a guideline sentence of 27 months' imprisonment based upon her theft of $223,000 from the City of St. Louis.

10. This Court's sentence should not result in disparate sentences. In considering guideline sentences received by other similarly situated defendants, including but not limited to defendants such as Matthew Kent and Dannielle Welch Benson, who suffered health issues and whose incarceration caused adverse consequences for their families, a downward variance here for defendant Hinson would, in fact, result in a disparate sentence.

11. Defendant also points to the fact of restitution as a basis for a downward variance here. Every criminal defendant, including defendant Hinson, is required and mandated to make restitution to the victim. The fact that defendant and his wife were able to obtain funds from a relative in what defendant terms an eventual inheritance is admirable, but based upon the facts and circumstances of this case, such payment should not serve as the basis for a downward variance. This is a case where defendant stole and embezzled substantial sums over eight years from a Fire Protection District that provided daily emergency services to the residents of the

District.  As a result of defendant's criminal conduct, those stolen and embezzled funds were not available to purchase necessary equipment, to make necessary equipment repairs, or to hire additional firefighters and personnel during those years when they were needed.  Restitution at this time cannot possibly make up for the harm caused by defendant's substantial theft and embezzlement of funds over those eight years.  The funds he stole during those years were not available then, when they were needed, and as a result the District and its residents suffered significantly.

WHEREFORE, the United States of America prays that this Honorable Court sentence defendant to an appropriate term of imprisonment within the advisory guideline range, without a downward variance, and for such other relief as this Court deems appropriate and just under the circumstances.

                                                     Respectfully submitted,

                                                     RICHARD G. CALLAHAN
                                                     United States Attorney

*s/Hal Goldsmith*
HAL GOLDSMITH #62501
Assistant United States Attorney
111S. 10th Street, Room 20.331
St. Louis, Missouri 63102
(314) 539-2200

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 31, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

      Catherine L. Hanaway; Jeffrey B. Jensen.

                                           /s/ Hal Goldsmith
                                           HAL GOLDSMITH
                                           Assistant United States Attorney

Case: 4:13-cr-00010-ERW   Doc. #:  35   Filed: 05/31/13   Page: 10 of 10 PageID #: 170